UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDRIC ALLEN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-02501-WHO<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br>Re: Dkt. No. 19 |

　　　　Plaintiffs Fredric and Phyllis Allen seek a tax refund from the United States for tax assessed on $63,662 of income that was generated from the Allens' sale of 2.63 acres of undeveloped real estate in East Palo Alto, California ("Property"). They contest the government's conclusion that the proceeds were "other income" instead of capital gains. After discovery was completed, the government filed a motion for partial summary judgment that was argued on May 21, 2014. Because it is beyond dispute that Mr. Allen intended to develop the Property and for many years made efforts to do so, I find that the income was properly characterized as other income and GRANT the government's motion.

## BACKGROUND

　　　　Plaintiff Frederic Allen purchased the Property in 1987.[1] He testified that he purchased the land for purposes of developing it himself for sale. Deposition Testimony of Fredric V. Allen, Ex. 1 [Docket No. 21-1] at 18:8-10 ("I started out to develop this property and concluded that a sale was more to my – more in line with my capacity."). In his subsequent declaration filed to oppose the government's motion, he asserts he bought the land as "investment property." Declaration of Fredric Allen [Docket No. 23-2], ¶ 6.

---

[1] Unless otherwise noted, the following facts are undisputed.

While Mr. Allen tried to create a dispute by his conflicting statements regarding his intent when he acquired the Property, the Allens admit that between 1987 and 1995, Mr. Allen attempted to develop the Property on his own. Allen Decl. ¶ 7. He spent money on engineering plans and took out a second mortgage. *Id.* From 1995 through 1999, he asserts in his declaration that he attempted to find investors and partners to take over the land because he needed "to dispose" of the Property. *Id*. Allen testified that during the time he owned the Property, his own firm (Fredric v. Allen, Incorporated) also developed approximately 10 sets of plans for the Property as he "went through the process of trying to find a partner to develop the project." Allen Depo. at 42:14-24. Further, he brought in other partners with whom he tried to develop the Property. Allen Depo. at 15:2-17.

In 1998, Clarum Corporation, a property developer, expressed interest in the land. Allen Decl. ¶ 9. In March 1999, Allen sold the Property to Clarum ("Agreement"). Allen Decl. ¶ 10. Clarum paid a lump sum to clear title on the Property that had been encumbered as a result of Allen's efforts to develop it and to satisfy Allen's debts to former partners, and agreed to pay 22% of its profits and a set fee whenever a developed unit was sold. *Id*.; Allen Depo. 47:18 – 48:48:21. Initially, the Agreement contemplated that Allen's firm would do the civil engineering work for the project. Allen Depo. 44:13-19. Allen's firm did a "good deal" of the engineering until Clarum changed the project and hired another engineer. *Id*. at 17-19. In late December 1999 or early 2000, Clarum and Allen renegotiated the Agreement as to the set fee Clarum was required to pay Allen each time a unit was sold. Allen Decl. ¶ 13. In 2004, the Allens received a final installment payment from Clarum of $63,662. Clarum issued a 1099-MISC form with respect to its 2004 payment to the Allens.

At his deposition, Allen testified that when he received a distribution from Clarum in the years prior to 2004, he reported it as "other income" on his tax returns. Allen Depo. at 60:11-13. In his declaration, he asserts that his deposition testimony was wrong and that, instead, the distributions were reported as long term capital gain. Allen Decl. ¶ 20. Neither Allen nor the government submitted copies of the Allens' tax returns during the years at issue.

The Allens filed their 2004 federal tax return in August 2007. They did not report the

$63,662 payment from Clarum. In their amended tax return, filed in September 2008, the Allens reported the $63,662, and characterized it as both a long term capital gain resulting from the sale of a partnership interest in Clarum and as "other income."[2]

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial." *Id*. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v.*

---

[2] The $63,662 was not, in fact, the result of a sale of a partnership interest in Clarum.

*Liberty Lobby, Inc.*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

"Capital asset" is defined as "property held by the taxpayer" *except* for "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." 26 U.S.C. § 1221(a)(1). Courts should construe capital assets "'narrowly . . . to afford capital-gains treatment only in situations typically involving the realization of appreciation in value accrued over a substantial period of time, and thus to ameliorate the hardship of taxation of the entire gain in one year.'" *Trantina v. United States*, 512 F.3d 567, 571 (9th Cir. 2008) (quoting *Comm'r v. Gillette Motor Transp., Inc.*, 364 U.S. 130, 134 (1960)).

"Ordinarily, whether specified property is held by the taxpayer primarily for sale to customers in the course of his trade or business is a question of fact." *Austin v. Commissioner*, 263 F.2d 460, 461 (9th Cir. 1959). Courts consider several factors to determine whether property was held by a taxpayer primarily for sale to customers in the ordinary course of the taxpayer's trade or business including: (1) the nature of the acquisition of the property; (2) the frequency and continuity of sales over an extended period; (3) the nature and the extent of the taxpayer's business; (4) the activity of the seller with respect to the property; and (5) the extent and substantiality of the transactions. *Id*. at 462. "[H]owever, each case must be decided upon its particular facts, and the presence of any one or more of these factors may or may not be determinative of a particular case." *Id*. As to the first factor "'[w]hile the purpose for which the property was acquired is of some weight the ultimate question is the purpose for which the property is held.'" *Pool v. Commissioner*, 251 F.2d 233, 236 (9th Cir. 1957) (quoting *Rollingwood Corp. v. Commissioner*, 190 F.2d 263, 266 (9th Cir. 1951)).

"In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover." *United States v. Janis*, 428 U.S. 433, 440 (1976); *see also Fed-Mart Corp. v. United*

*States*, 572 F.2d 235, 238 (9th Cir. 1978) (relying on cases finding that it is taxpayer's burden in refund suit to prove Commissioner erred and to establish the amount of refund due).

Here, the evidence is compelling that Allen intended to develop the Property when he purchased it and that he undertook substantial efforts to develop it during the time that he owned it. The first and fourth factors are outcome determinative. Allen does not create a material dispute that could meet his burden to show that he is entitled to recover any amount from the government as a result of its determination that proceeds of the sale of the Property were "other income."

Turning to the first factor – the nature and acquisition of the Property – the government has provided substantial support to show that Allen purchased the Property in order to develop and sell it, including Allen's deposition testimony. Allen Depo., Ex. 1 [Docket No. 21-1] at 18:8-10 ("I started out to develop this property and concluded that a sale was more to my – more in line with my capacity."). While Allen declares in opposition that he purchased the Property "as an investment property," Allen Decl. ¶ 6, he does not dispute that his intent at the time of purchase (and for some time after) was to develop it for sale. Allen Decl. ¶ 7 ("Between 1987 and 1995, I attempted to develop the Subject Property on my own").

Allen argues that his intent with respect to the Property changed over time when it became clear to him that developing the Property was beyond his means and expertise. Allen Decl. ¶ 7. It is true that a purchaser's intent with respect to Property can change over time, and in such cases, "it is the dominant purpose of his holding during the period prior to the sale which is critical." *Tibbals v. United States*, 362 F.2d 266, 273 (Ct. Cl. 1966). However, Allen makes no showing of when, how or why his intent changed.

Critically, the fourth *Austin* factor focuses on the seller's activity with respect to the Property, and there is no doubt that Allen was active. Allen testified in his deposition that his intent to with respect to the Property was – at all times until after the sale to Clarum – one to develop and sell the Property. He said that during the time he owned the Property, he and/or his firm created around 10 different sets of plans for the development "as we went through the process of trying to find a partner to develop the project." Allen Depo. at 42:14-24. He testified that he continued that "process" of finding a partner to develop the project until shortly *after* the sale to

Clarum. *Id*. at 42:25 – 43:9. Indeed, some of his debts to former partners were paid out as part of the Clarum deal. While he tried in his declaration to describe his involvement with the Property as limited to the development of civil engineering plans, Allen Decl. ¶ 15, he admitted in his deposition that he initially tried to develop the property on his own, then searched for partners to help develop the Property, and finally negotiated the deal with Clarum that resulted in a land sale and an initial role for Allen's firm for civil engineering work (although that role did not materialize) instead of a development agreement.

In the face of testimony describing Allen's significant and extensive efforts to develop and sell the Property, conducted over many years and through the time of the sale to Clarum, Allen failed to provide detail by way of declaration or other evidence to explain when his intent and his actions with respect to the Property changed. Instead, Allen states that from 1995 through 1999 he "attempted to find investors to take over the land as I needed to dispose of the property." That is insufficient. He does not clarify during what time frame he was working on the various "plans" for the development as part of the process for finding partners to develop the Property. He does not provide any explanation as to the nature and timing of the various partnerships he entered into in his attempt to develop the Property. It is Allen's burden to demonstrate that the IRS mischaracterized his income, but Allen has failed to meet his burden on summary judgment to overcome the government's undisputed evidence as to his intent in buying and purpose in holding the Property. Allen has not created a material issue of fact to rebut his own testimony that up until the date (or shortly after the date) of the sale to Clarum, he intended to develop the Property for sale. *Cf. Long v. Comm'r*, T.C. Memo 2013-233, 24, 2013 Tax Ct. Memo LEXIS 237, * 25 (T.C. 2013) (finding that where taxpayer initially purchased land to build and sell condo units, the fact that he changed mind and sold land ready for construction of a building did not alter view that land was held primarily for sale to customers in ordinary course of business; "The sale of a parcel of land (ready for construction) would result in a large profit from a single-sale transaction. The profit would have been from Long's efforts to develop the land, not from the mere passage of time.").

The other factors described in *Austin* that courts should consider to determine whether the

1   Property was held primarily for sale to customers in the ordinary course of business do not change
2   this analysis.  For example, under the second factor – nature and frequency of sales – Allen points
3   out that the Property was his only property development scheme, and argues that "[f]requent and
4   substantial sales of real property more likely indicate sales in the ordinary course of business,
5   whereas infrequent sales for significant profits are more indicative of real property held as an
6   investment."  *Pool v. Comm'r*, T.C. Memo 2014-3, 11, 2014 Tax Ct. Memo LEXIS 3, 11 (T.C.
7   2014); Allen Decl. ¶ 18.  However, the fact that Allen purchased only one Property for
8   development (or as an investment) is not determinative, as the "'one-bite' rule, such that a
9   taxpayer who engaged only in one venture or one sale cannot under any circumstances be held to
10  be in a trade or business as to that venture or sale," has been rejected.  *See, e.g., Cottle v. Comm'r*
11  *of Internal Revenue*, 89 T.C. 467, 488 (1987).

12  On the third factor – the nature and the extent of the taxpayer's business – the government
13  does not dispute that during the times at issue Allen was employed full-time as a civil engineer
14  working primarily for developers.  Allen Decl. ¶¶ 14-15.  "Carrying on a business" for purposes of
15  this determination "'implies an occupational undertaking to which one habitually devotes time,
16  attention, or effort with substantial regularity.  Merely disposing of investment assets at
17  intermittent intervals, without more, is not engaging in business, even though some preliminary
18  effort is necessary to render the asset saleable.'"  *Austin*, 263 F.2d at 464 (quoting *Fahs v.*
19  *Crawford*, 161 F.2d 315, 317 (5th Cir. 1947)).  But cases recognize that a taxpayer can be
20  involved in more than one business.  *Austin*, 263 F.2d at 464.  Here, the amount of time Allen
21  spent trying to develop the Property was significant.  He admits that he worked on it in his
22  capacity as a civil engineer; admits there were at least 10 sets of plans drawn up; admits that he
23  was initially hired by Clarum to do the civil engineering on the Project; and admits the he sought
24  out partners and incurred debts to those partners during their attempts to develop the Property.
25  Even though the development of the Project may not have been his main occupation throughout
26  his ownership of the Property, it appears to have required substantial time, attention and effort.[3]

---

[3] Again, Allen could have – but did not – rebut the government's reliance on his deposition testimony by explaining exactly how much time he spent working on the Property versus working

7

On the fifth factor – the extent and substantiality of the transactions – Allen asserts that because he only purchased investment property once and eventually sold it once (to Clarum), the transaction could not amount to a sale "in the ordinary course of the taxpayer's trade or business." The government notes that Clarum paid well over $1,000,000 for the Property – the majority of which went to the Allens and the rest to pay off debts and liens on the Property that were incurred when Allen attempted to develop the Property with partners. The government also argues that the $63,000 payment in question represented over 25% of the Allens' income for 2004. *Cf. Flood v. Comm'r*, T.C. Memo 2012-243, P8, 2012 Tax Ct. Memo LEXIS 243, * 7 (T.C. 2012) (considering the "relationship of the income from the property to the taxpayer's total income" as part of the ordinary course of trade or business test). That the final payment (received in 2004) constituted about 25% of the Allens' total income for that year is not determinative under either this factor or the third factor discussed above. *But see Flood*, 2012 Tax Ct. Memo LEXIS 243, * 9 ("the income from Mr. Flood's day trading was modest compared to the Floods' gains from their real-estate venture."). While the extent and substantiality factor might slightly favor the Allens because there was only one main sale transaction, it is neutralized since the transaction came after Allen had failed in his efforts to develop it himself or find a developer to partner with him on the Project.

Considering the totality of the evidence, and Allen's failure to rebut the same by providing additional details explaining the extent of his efforts with respect to the Property, I find that Allen has failed to raise a material question of fact to rebut the government's evidence that Allen purchased and held the Property in order to develop and sell it in the ordinary course his trade or business.

---

on other projects for his firm.

1 **CONCLUSION**

2 The government's Motion for Partial Summary judgment is GRANTED.

3 **IT IS SO ORDERED**.

4 Dated: May 28, 2014



WILLIAM H. ORRICK
United States District Judge